**Affirmed and Memorandum Majority and Dissenting Opinions filed April 20, 2021.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-20-00729-CV

---

### IN THE MATTER OF J.A.A., JR.

---

**On Appeal from the County Court at Law No. 4
Fort Bend County, Texas
Trial Court Cause No. 20-CJV-023528**

---

### MEMORANDUM DISSENTING OPINION

Appellant's sole issue is as follows: "Whether a juvenile court that waives its original jurisdiction and transfers a child to District Court for criminal proceedings, pursuant to Texas Family Code § 54.02, abuses its discretion when it misapplies the transfer statute by incorrectly analyzing a mandatory transfer factor." Family Code section 54.02(f) states:

> In making the determination required by Subsection (a) of this section, the court *shall consider*, among other matters:
>
>> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against

the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

*(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.*

Tex. Fam. Code Ann. § 54.02(f) (emphasis added). The trial court made the following finding of fact to support the 54.02(f)(4) factor:

*Upon inquiry about services available to the Juvenile Court, including commitment to the Texas Juvenile Justice Department (TJJD), Dr. Martin reports that the services and treatment needs of [appellant] exceed the amount of time that he has available within ·the juvenile system, and acknowledges that under the current referrals a determinate sentence petition is not a legal option for the offenses of Robbery.*

Immediately after making that finding, the trial court proceeded as follows:

Based on the above conclusions of [] Dr. Tonya Martin, as well as the totality of the evidence presented in all of the clerk's records, testimony adduced, and exhibits received at the hearing, this Court ORDERS and CERTIFIES that its exclusive jurisdiction sitting as a Juvenile Court, be WAIVED and that the [appellant] be discretionarily transferred to the appropriate District Court of Fort Bend County, Texas, for proper criminal proceedings pursuant to Texas Family Code section 54.02(a) and (f).

This court acknowledges that the trial court was "inaccurate" in analyzing section 54.02(f)(4) and making an affirmatively incorrect finding of fact, but nonetheless concludes that incorrect legal analysis was immaterial: "*Because we also presume that the juvenile court was aware of the law*, we further conclude that the finding's inaccurate attribution to Dr. Martin is immaterial, and that appellant

2

has not shown that the juvenile court failed to consider all procedures, services, and facilities that were available to it." (emphasis added).[1]

The Code Construction Act states: "'Shall' imposes a duty." Tex. Gov't Code Ann. § 311.016(2). The court of criminal appeals instructs us to give effect to the statute's plain meaning unless it leads to an absurd result. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). If the statute means what it says and the trial court clearly did not understand the law, then the trial court did not follow guiding rules and principles by making an incorrect finding of fact, which it has no discretion to do. So how does this court explain its holding that the trial court's incorrect finding under Family Code section 54.02(f)(4) was "immaterial"? The lack of analysis troubles me, given that the case is ultimately decided on (1) a post-hoc argument that was not raised to the trial court and (2) the "presumption" that the trial court "was aware of the law," which apparently stands for the idea that even though

---

[1] I note the unobjected-to testimony of Dr. Martin that a reason not to place a juvenile with Texas Juvenile Justice Department is that it is a bad place:

> Q. And the state of TJJD, as it exists at this time, is that only the most serious youth are committed there?
> A. Yes.
> Q. And many of the youth, then, would be youth that have similar backgrounds, quite frankly, to [appellant]?
> A. Correct. Yes.
> Q. They committed very violent offenses?
> A. Yes.
> Q. And have violent -- their – their psychological profiles might look a lot, like, [appellant's]?
> A. Yes, they could be similar.
> Q. For someone, like, [appellant], who has -- has this stronger tendency to be a follower, how concerning could that be to put him in that environment with more folks that are just like him?
> A. Well, there is a concern that he would model after those other -- those other individuals' behavior, in terms of the negative behavior.

The court mentions this testimony in its opinion, seemingly with no sense that it could legitimately be seen as a damning commentary of the Texas criminal justice system.

the trial court incorrectly evaluated the record before it, we should assume the trial court correctly considered arguments that were not made.

I do not understand how this court gets there. I do not know how the trial court would have exercised its discretion were it to have correctly stated the law. I would leave it to the trial court to determine how it should exercise its discretion.

I respectfully dissent.

/s/    Charles A. Spain
Justice

Panel consists of Chief Justice Christopher and Justices Spain and Wilson (Christopher, C.J., majority).

4